United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA DONOHO,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SONOMA, et al.,<br><br>    Defendants. | Case No. 15-cv-01392-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS FOURTH AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 9 |

## INTRODUCTION

*Pro se* plaintiff Julie Donoho alleges that she was forced to resign from her position with the General Services Department of Sonoma County following years of abuse and bullying by her supervisors and management. While not challenging three of her causes of action, defendant Sonoma County moves to dismiss the claim that it constructively terminated Donoho in retaliation for her prior complaints about the abuse. Former managers defendants Paula Shimizu and Ed Buonaccorsi move to dismiss Donoho's claims for intentional infliction of emotional distress. Shimizu also moves to dismiss Donoho's defamation and interference with prospective advantage claims.

Defendants' motion is GRANTED IN PART and DENIED IN PART. As discussed below, pursuant to the Government Code, Sonoma County is immune to one of Donoho's retaliatory termination claims. There are insufficient factual allegations to support her defamation and interference with prospective advantage claims. And while Donoho has sufficiently pleaded intentional infliction of emotional distress against Buonaccorsi, she failed to do so against Shimizu.

**BACKGROUND**

Donoho worked for Sonoma County's General Services Department as a project manager on multi-million dollar construction projects from 2003 until she resigned in 2014. Fourth Amended Complaint ("4AC") ¶¶ 8, 12, 51 [Dkt. No. 1-1].[1] During the first eight years of her employment, she experienced multiple forms of abusive and discriminatory behavior, "including five years of verbal abusiveness that lasted approximately 1.5 hours per day by [her] direct supervisor." *Id*. ¶ 14. Donoho complained about the discrimination at various times but "very little was investigated or resolved" because Sonoma County lacked effective policies or procedures to address bullying and abuse by supervisors. *Id*. ¶¶ 13-15. Rather than address the problems, management began to "attack" Donoho "in an escalating series of actions evolving from abusive, to discriminatory, violent, and punitive." *Id*. ¶ 16.

The managers and supervisors that had abused and discriminated against Donoho left the General Services Department between 2008 and 2011. *Id*. ¶ 17. "As he left, the Division Head libeled [Donoho's] reputation with an egregiously defamatory letter, stating that he had to punish [Donoho] for claiming discrimination." *Id*. Shimizu, who was Deputy Director of General Services at the time, circulated the letter in violation of procedures.[2] *Id*.

Donoho started an "official EEO complaint" in May 2010. *Id*. ¶ 19. HR agreed that she had a valid complaint and Donoho successfully petitioned the General Services Director to rescind the defamatory letter. *Id*. Donoho did not ultimately follow through with the EEO complaint, choosing to instead "work with the County to move forward productively." *Id*.

Between 2010 and 2013, she "experienced three years of abuse-free working environment." *Id*. ¶ 21. In 2013, after receiving excellent performance reviews, she applied for two promotional opportunities: Deputy Director of General Services and Capital Projects

---

[1] This complaint and Donoho's prior complaints were filed in Sonoma County Superior Court. Defendants removed the operative fourth amended complaint because it added a cause of action under 42 U.S.C. Section 1983 (third cause of action). *See* Dkt. No. 1 at 2 (notice of removal).

[2] Although the Complaint is unclear, Shimizu apparently left the General Services Department sometime after that and before 2013, when Donoho applied for the Deputy Director of General Services's position.

1   Manager. *Id*. ¶¶ 8, 21-22. She passed all qualifying examinations and was recommended as a
2   finalist for both positions. *Id*. ¶ 22. Defendant Buonaccorsi received the Deputy Director position
3   and became Donoho's supervisor in August 2013. *Id*. ¶ 23. Buonaccorsi then participated in the
4   finalist interview of Donoho on October 4, 2013 for the remaining promotional opportunity,
5   Capital Projects Manager. *Id*. Donoho was one of two finalists for that position, but was not hired
6   due to false information which Shimizu spread about her. *Id*.

7   Buonaccorsi bullied Donoho over the next several months, discussed in more detail below,
8   leading Donoho to file a complaint with the EEO in February 2014 regarding Sonoma County's
9   lack of policies and procedures for addressing bullying by supervisors. *Id*. ¶ 39. Donoho was told
10  that "bullying is legal." Her complaint was not resolved. *Id*. In frustration and distress, she left
11  employment with Sonoma County in February 2014. *Id*. ¶ 41.

12  Donoho has filed suit against Sonoma County and Shimizu and Buonaccorsi. She alleges
13  three causes of action that defendants do not seek to dismiss: (i) retaliation in violation of
14  California's Fair Employment and Housing Act ("FEHA") (against Sonoma County); (ii) failure
15  to prevent retaliation under FEHA (against Sonoma County); and (iii) violation of due process
16  (against Sonoma County). The defendants listed in parentheses move to dismiss the remaining
17  four causes of action for retaliatory termination in violation California Labor Code § 6310 (against
18  Sonoma County); intentional infliction of emotional distress (against Shimizu and Buonaccorsi);
19  defamation (against Shimizu); and, interference with prospective economic advantage (against
20  Shimizu). I heard argument on May 27, 2015.

21  **LEGAL STANDARD**

22  Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
23  if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to
24  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
25  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when
26  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant
27  is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation
28  omitted). This standard is not akin to a probability requirement, but there must be "more than a

1  sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require

2  "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

3  relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

4  In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I.   FOURTH CAUSE OF ACTION: VIOLATION OF LABOR CODE § 6310 (DEFENDANT SONOMA COUNTY)**

California Labor Code section 6310 prohibits the firing of an employee in retaliation for a complaint filed by the employee. Cal. Lab. Code § 6310(a). Donoho alleges that Sonoma County violated section 6310 because, in retaliation for her complaints about unsafe work conditions, Sonoma County constructively discharged her by fostering an abusive work environment which forced her to resign. 4AC ¶¶ 78-80. She further alleges that Sonoma County is liable per California Government Code section 815.6, which authorizes suit against a public entity which fails to comply with a mandatory duty (known as the mandatory-duty exception). *Id.* ¶ 81.

Sonoma County argues that as a public entity it is immune from Donoho's Labor Code section 6310 claim pursuant to Government Code section 815(a), which states: "Except as otherwise provided by statute: [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Sonoma County does not address Donoho's allegation that her suit is authorized by Government Code section 815.6.

Section 815.6 provides that:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the

4

> public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Gov't Code § 815.6. Donoho alleges that Labor Code sections 6400, *et seq*. impose duties on Sonoma County to provide a healthy and safe workplace with effective policies and procedures, and to address unsafe or unhealthy conditions when they occurred. 4AC ¶ 78. She argues that Sonoma County's refusal to comply with those duties triggers section 815.6.

I disagree. To start with, this cause of action relates to Sonoma County's alleged violation of Labor Code section 6310 (retaliatory termination); Donoho does not state a separate claim for violations of Labor Code sections 6400, *et seq*. In *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 898 (2008), the California Supreme Court held that section 6310 claims against public entities are barred by Government Code section 815(a). The cases cited by Donoho, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 413 (1975) and *Bd. of Admin. v. Wilson*, 52 Cal. App. 4th 1109, 1119 (1997), do not address section 815.6 and do not support her argument.

Donoho's claim fails even assuming that it is predicated on alleged violations of Labor Code sections 6400, *et seq*., because those sections do not trigger the mandatory-duty exception in section 815.6. To trigger the mandatory-duty exception, "a plaintiff must establish (1) the existence of an enactment that imposes a mandatory, not discretionary, duty on the public entity and (2) that the enactment is intended to protect against the particular kind of injury the plaintiff suffered." *Tuthill v. City of San Buenaventura*, 223 Cal. App. 4th 1081, 1089 (2014), *reh'g denied* (Mar. 3, 2014), *review denied* (May 14, 2014).

An enactment creates a mandatory duty within the meaning of section 815.6 if it requires a public agency to "take a particular action" and "affirmatively imposes the duty and provides implementing guidelines." *San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*, 213 Cal. App. 4th 418, 429 (2013) (citation omitted). In contrast, an enactment does not create a mandatory duty "if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion." *Id*. (citation omitted).

Sections 6400, *et seq*. do not require Sonoma County to take a particular action or set out specific steps for Sonoma County to take. Rather, they "set[] out general duties of employers regarding safety" and afford employers discretion to take reasonable steps to ensure safety in a

given workplace. *California Corr. Supervisors Org., Inc. v. Dep't of Corr.*, 96 Cal. App. 4th 824, 830 (2002) (citing Labor Code sections 6400-04). For example, section 6400 provides that "[e]very employer shall furnish employment and a place of employment that is safe and healthful for the employees therein." Cal. Lab. Code § 6400(a). Since the enactments merely recite goals and policies that must be implemented through Sonoma County's exercise of discretion, they do not trigger the mandatory-duty exception in section 815.6.

In addition, "section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered." *Guzman v. Cnty. of Monterey*, 46 Cal. 4th 887, 898 (2009). "The plaintiff must show the injury is one of the consequences which the enacting body sought to prevent through imposing the alleged mandatory duty." *Id*. (citation and brackets omitted). It is not sufficient that the enactment confers some benefit on the class to which plaintiff belongs; "if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6." *Id*. (citation omitted). The "particular kind of injury" here is Donoho's alleged constructive termination in retaliation for her earlier complaints. *See* 4AC ¶¶ 80, 83. But she has not provided any legislative history or other authority indicating that the Labor Code sections at issue were enacted to protect against retaliatory termination. Her section 815.6 claim therefore fails. *See, e.g.*, *Bologna v. City & Cnty. of San Francisco*, 192 Cal. App. 4th 429, 436 (2011) (affirming dismissal of section 815.6 claim where plaintiffs did not establish that their injury was one of the consequences legislature sought to prevent).[3]

---

[3] In her opposition, Donoho also argues that Sonoma County's repeated failure to investigate her complaints violated Labor Code section 6309 which provides, in part, that "if the division receives a complaint from an employee . . . that his or her employment or place of employment is not safe, it shall, with or without notice or hearing, summarily investigate the complaint as soon as possible, but not later than three working days after receipt of a complaint charging a serious violation, and not later than 14 calendar days after receipt of a complaint charging a nonserious violation." Cal. Lab. Code § 6309. However, section 6309 does not apply to Sonoma County; it applies to the Division of Occupational Safety and Health within the California Department of Industrial Relations. *See* Cal. Lab. Code § 6307; *Quintana v. California-Osha*, 2012 WL 4433798, at *2 (E.D. Cal. Sept. 24, 2012) (pursuant to section 6309, employees may file a complaint with the Division of Occupational Safety and Health to report an unsafe place of employment).

Donoho's claim against Sonoma County under Government Code section 815.6 is DISMISSED WITH LEAVE TO AMEND. To trigger Sonoma County's liability under section 815.6, Donoho must establish (1) the existence of an enactment that imposes a mandatory, not discretionary, duty on Sonoma County and (2) that the enactment is intended to protect against the particular kind of injury which she suffered.

## II.   FIFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (DEFENDANTS BUONACCORSI AND SHIMIZU)

Donoho alleges a cause of action for intentional infliction of emotional distress against defendants Buonaccorsi and Shimizu. "The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Berkley v. Dowds*, 152 Cal. App. 4th 518, 533-34 (2007) (citations omitted). To satisfy the first requirement, the conduct at issue "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. (citation omitted). "Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id*. (citations omitted).

Shimizu was Deputy Director of General Services at the relevant time. Donoho alleges that:

- Shimizu circulated a defamatory letter about Donoho, written by the departing division head, "without following proper procedures or properly investigating allegations. 4AC ¶ 17.
- "On one occasion, Defendant Shimizu asked Plaintiff to rescind her claims of discrimination. On another occasion, Defendant Shimizu accused Plaintiff of discrimination, rather than fully investigate the situation." *Id*. ¶ 18.
- Shimizu told false information about Donoho to Buonaccorsi, which influenced Buonaccorsi's decision not to promote Donoho. *Id*. ¶ 93.

These allegations are insufficient to state a claim for intentional infliction of emotional distress against Shimizu. The contents of the allegedly defamatory letter are not disclosed, so I

7

cannot reasonably infer that circulating it constituted extreme and outrageous behavior. Similarly, without a description of the context or the communications at issue, I cannot infer that it was extreme and outrageous for Shimizu to ask Donoho to rescind her claims of discrimination or to accuse Donoho of discrimination. *See Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) ("the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities") (citation omitted). Likewise, Donoho has not described the nature of the alleged false information, aside from alleging that it suggested that she "could not do the job or was not a good choice for the position." 4AC ¶ 95. That is too vague for me to conclude that sharing the information was extreme and outrageous. Donoho's claim for intentional infliction of emotional distress against Shimizu is DISMISSED WITH LEAVE TO AMEND.

In contrast, Donoho makes the following allegations against Buonaccorsi, who was General Services Deputy Director for Sonoma County:

- Buonaccorsi participated in Donoho's interview for the position of Capital Projects Manager on October 4, 2013. 4AC ¶ 23. Donoho was one of two finalists for the position. *Id*.

- On October 9, 2013, Buonaccorsi told Donoho that she was denied promotion to the Capital Projects Manager position, that she would never be promoted, that there was nothing she could do to change that, and that she should leave [the General Services department, presumably]. *Id*. ¶ 25.

- Buonaccorsi "smiled derisively" and told Donoho that "she should feel bad, and to go home and take a couple of days off from work." *Id*. ¶ 26.

- Buonaccorsi claimed that his knowledge of Donoho's past claims of discrimination and retaliation influenced his decision not to promote her and that he would never promote her as long as he was in charge. He "smiled with contemptuous enjoyment as he referenced the prior traumatic circumstances, and wielded his position of power over her career." *Id*. ¶ 27.

- On October 10 and 11, 2013, Buonaccorsi shared his decision not to promote Donoho with other members of the staff, which was contrary to General Services hiring practices. "His eagerness to act this way was humiliating to Plaintiff." *Id*. ¶ 28.

- On October 11, 2013, Buonaccorsi informed Donoho that Buonaccorsi was good friends with defendant Shimizu after Donoho inquired where Buonaccorsi had learned "anything about the past." *Id*. ¶ 29. Buonaccorsi "refused to discuss his concerns or resolve them so that Plaintiff and Defendant could work together." *Id*. ¶ 30.

- Through the following Spring and Winter, Buonaccorsi "cut Plaintiff out of her projects making it more and more difficult to effectively address the concerns of her clients or to protect county interests." Buonaccorsi's conduct included:

    - interrupting Donoho when she was speaking;
    - avoiding Donoho;
    - laughing at Donoho in meetings;
    - omitting Donoho from email exchanges, internal meetings, and project discussions with clients regarding projects for which she was responsible;
    - "delving into" Donoho's projects without consultation:
    - assigning projects to Donoho's staff without her knowledge;
    - leaving Donoho's team out of the loop altogether on urgent projects;
    - assigning Donoho's projects to staff on a different team without notice; and
    - inviting Donoho's staff and supervisor to project meetings with the Client, "despite that [Donoho] was the one with the subject matter knowledge." *Id*. ¶ 32.

- Donoho "brought the omissions and sidestepping to light, and there was agreement to not repeat those actions, to no avail, they continued to occur creating confusion, liability and personal and professional concern. This accelerated until it became obvious there was no possibility for a different outcome." *Id*.

While it is a close question, Donoho has adequately alleged that Buonaccorsi's conduct, considered in its totality and drawing all inferences in her favor, went beyond mere insults or trivialities and exceeded that usually tolerated in a civilized community. It is significant that Buonaccorsi was in a supervisorial position over Donoho and had hiring responsibility for the position for which Donoho applied. *See Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1129 (Ct. App. 1989) ("The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests.") (citations omitted). Given that relationship, Buonaccorsi's alleged repeated denigration and public humiliation of Donoho is sufficient at the pleading stage to state a claim for intentional infliction of emotional distress. Buonaccorsi's motion to dismiss that claim is DENIED.

### III. SIXTH CAUSE OF ACTION: DEFAMATION (DEFENDANT SHIMIZU)

Donoho alleges that Shimizu defamed her by telling false information about her to Buonaccorsi, which influenced Buonaccorsi's decision not to promote Donoho. 4AC ¶ 93. The defamatory information "involved false allegations about [Donoho], such as derogatory suggestions, statements, and/or innuendos that [Donoho] could not do the job or was not a good choice for the position for which she was a finalist." *Id.* ¶ 96.

Donoho's defamation claim fails because she has not identified the words or the substance of the allegedly defamatory statement. *See Maponics, LLC v. Wahl*, 2008 WL 2788282, at *4 (N.D. Cal. July 18, 2008) ("In order to adequately state a claim for defamation, the claimant must 'allege either the specific words or the substance of the statements'….") (citing *Ellenberger v. Espinosa,* 30 Cal.App.4th 943, 951 (1994)). Her allegations that Shimizu made "derogatory suggestions, statements, and/or innuendos that [Donoho] could not do the job or was not a good choice for the position for which she was a finalist" are too vague and lack the factual foundation necessary for a defamation claim. *See, e.g. Petersen v. County of Stanislaus*, 2012 WL 4863800, *10 (E.D. Cal. 2012) ("the alleged statements regarding Plaintiff's dishonesty, insubordination, and neglect of duty are too vague and unspecific to provide the factual foundation for a defamation claim"); *see also Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal. 2d 224, 235 (1961) (defamation claim defective where it "does not allege either the specific words or the substance of statements … but instead merely alleges the conclusions of the pleader that statements were made which 'intimated and suggested' that plaintiff had done certain wrongful things").

In her opposition, Donoho argues that "it is not necessary to know precisely what was said . . . to prove that Defamation occurred. It is enough to know that the Defendant claimed to have knowledge of information which significantly affected his decision making, and that he named Defendant Shimizu as the source of the information, without any effort to determine the truth or falsity of the information." Dkt. No. 17 at 14. But without alleging at least the substance of the allegedly defamatory statement, it cannot be determined whether the alleged statement is capable of sustaining a defamatory meaning and is not mere opinion protected by the First Amendment. *See Knievel v. ESPN*, 393 F.3d 1068, 1073-74 (9th Cir. 2005) (in order to survive motion to

1  dismiss, plaintiff must establish that allegedly defamatory statements are "reasonably capable of
2  sustaining a defamatory meaning" and "are not mere comment within the ambit of the First
3  Amendment") (internal citations omitted).  Donoho's cause of action for defamation is
4  DISMISSED WITH LEAVE TO AMEND.

### IV. SEVENTH CAUSE OF ACTION: INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (DEFENDANT SHIMIZU)

Donoho alleges that Shimizu interfered with her economic relationship with Buonaccorsi by making the statements discussed above regarding Donoho's inability to do the job, which led to Donoho being denied the promotion.  4AC ¶¶ 101-02, 104-05.  Donoho also alleges that Shimizu violated Government Code section 19680(c), which provides that it is unlawful for any person "[w]illfully to furnish to any person any special or secret information for the purpose of either improving or injuring the prospects or chances of any person examined, certified, or to be examined or certified under this part or rule."  4AC ¶ 103 (citing Gov't Code §19680(c)).[4]

A claim for intentional interference with prospective economic advantage requires "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Arthur J. Gallagher & Co. v. Lang*, 2014 WL 4354670, at *4 (N.D. Cal. Sept. 2, 2014) (citing *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153 (2003)).

Shimizu argues that this claim fails because (i) Donoho has not pleaded any economic relationship between herself and Buonaccorsi, rather, her relationship is with Sonoma County; (ii) in any event, Donoho's alleged expectation of receiving a promotion is too hypothetical to support a claim for interference with prospective economic advantage, particularly as Donoho has not pleaded that she was more qualified than the candidate that received the promotion; and (iii) Government Code section 19680(c) does not create a private right of action.

---

[4] In her complaint, Donoho cites *Labor* Code section 19680(c), but she states in her opposition to the motion to dismiss that she intended to cite *Government* Code 19680(c).  Dkt. No. 17 at 16.

11

In opposition, Donoho states that she will clarify in an amended complaint that the economic relationship at issue is between herself and Sonoma County. She also argues that she has sufficiently alleged an expectation of receiving a promotion, as discussed in detail below.[5] Finally, Donoho explains that her intent in citing Government Code section 19680(c) was to show that the conduct was independently wrongful, an element of a claim for intentional interference with prospective economic advantage.[6]

As drafted, Donoho's complaint does not adequately allege a probability of future economic benefit. The California Supreme Court has explained that "[a]lthough varying language has been used to express this threshold requirement, the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987). For example, a bidder who submits the lowest lawful bid, but loses because of a competitor's unlawful conduct, can state a claim for interference with prospective economic advantage. *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 234 Cal. App. 4th 748, 760 (2015), *review filed* (Apr. 1, 2015). In contrast, Donoho alleges merely that she was one of two finalists for the promotion and that she was recommended to be a finalist by four panels of three interviewers, "many of whom were colleagues of ten or more years, familiar with the quality of her work." 4AC ¶¶ 22-23. She does not allege that the other candidate was not qualified or any other reason that it was reasonably probable that she, not the other candidate, would receive the promotion. *Cf. Pardi v. Kaiser*

---

[5] Donoho also argues that she had "an expectation of continued employment until retirement age, and was vested in the retirement system." Dkt. No. 17 at 15. But her intentional interference claim is based on her alleged expectation of a promotion, not her expectation of continued employment. *See* Compl. ¶¶ 101-05. Indeed, Donoho alleges that Shimizu's defamatory statement caused Donoho to lose the promotion; she does not allege that it caused her to lose her current position. *Id*.

[6] Since Donoho apparently does not intend to state a cause of action under Government Code section 19680(c), I need not determine conclusively whether that section creates a private right of action. I note, however, that section 19682 provides that "[a]ction may be taken by the appointing power, the department, or the executive officer of the board may file charges, against a state employee who violates any provisions of this chapter." Cal. Gov't Code § 19682. This suggests that section 19680(c) does *not* create a private right of action.

*Found. Hospitals*, 389 F.3d 840, 853 (9th Cir. 2004) (affirming summary judgment for defendant former employer where evidence did not support finding that potential employer "would more likely than not" have hired plaintiff but for former employer's alleged refusal to return potential employer's phone calls or otherwise verify plaintiff's former employment).

In her opposition, Donoho argues that the other candidate "was an outside hire, not a promotion, with no civil service experience," whereas Donoho had "ten years of institutional experience." Dkt. No. 17 at 16. These allegations are not in the complaint and would not save this cause of action if they were added in an amended complaint because they do not establish that Donoho would more likely than not have received the promotion but for Shimizu's alleged interference.

Donoho's cause of action for interference with prospective economic advantage is DISMISSED WITH LEAVE TO AMEND. Because Donoho has not sufficiently pleaded the threshold requirement that her prospective economic advantage was reasonably probable, I do not at this stage address whether she has adequately pleaded the remaining elements of a claim for interference with prospective economic advantage.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Dkt. No. 9. It is GRANTED with respect to Donoho's causes of action for retaliatory termination (fourth cause of action), intentional infliction of emotional distress against Shimizu (fifth cause of action) defamation (sixth cause of action), and interference with prospective advantage (seventh cause of action). Those claims are DISMISSED WITH LEAVE TO AMEND. Defendants' motion to dismiss Donoho's cause of action for intentional infliction of emotional distress against Buonaccorsi (fifth cause of action) is DENIED.

Any amended complaint shall be filed within 30 days of this order.

**IT IS SO ORDERED**.

Dated: June 22, 2015

WILLIAM H. ORRICK
United States District Judge

13